# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1887

_____

United States of America

*Plaintiff - Appellee*

v.

Cesar Sevilla-Acosta

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 14, 2014
Filed: March 27, 2014

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Cesar Sevilla-Acosta was convicted of one count of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 846. The district

court[1] sentenced him below the guidelines to 135 months' imprisonment. He appeals his conviction. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Sevilla contends he was "forced" to stipulate that he lived at a house used for marijuana distribution, in violation of the Fifth and Sixth Amendments. This court reviews legal conclusions de novo, and evidentiary issues for abuse of discretion. *United States v. Pumpkin Seed*, 572 F.3d 552, 557 (8th Cir. 2009) (legal conclusions); *United States v. Mohamed*, 727 F.3d 832, 836 (8th Cir. 2013) (evidentiary issues).

Before trial, Sevilla admitted, as part of a proffer agreement with the government, that he lived with a friend on Hawthorne Avenue for about three to four months in 2010. The agreement provided it could not be used against him in a criminal proceeding unless he presented evidence contradicting it.

At trial, a DEA agent testified that Sevilla was in the driveway of the Hawthorne residence on April 20, 2010—the day agents seized 84 pounds of marijuana from a vehicle leaving the residence. During cross-examination, defense counsel asked the agent:

> Q: [D]o you have any documents showing that Mr. Sevilla-Acosta ever entered into a rental agreement for the premises at [the Hawthorne residence] or any kind of lease arrangement or ownership showing that he was a resident, as opposed to maybe somebody who just stayed there with a friend for a period of time?

---

[1] The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

A: We do not have the lease agreement for there, no.

After cross-examination, defense counsel spoke with the government off the record. Defense counsel then asked the agent:

Q: All right. Now, to be clear, my question is not, and it was not meant to imply, that Mr. Cesar Sevilla-Acosta did not stay at [the Hawthorne residence] even for a period of months. My question was whether or not you had any documents showing that he was the lessor of [the Hawthorne residence] or anything like that?

A: We don't have the lease agreement. The documents that we have pertaining to that residence are the Xcel Energy documents that we've already—I've already testified about.

Q: Okay. And you had other information in the case, without going into detail, that he would stay there for an extended period of time, say months, living with a friend?

A: Yes. And the dates that you asked me about his vehicle being there, his vehicle was observed there by me personally on several other occasions when we would drive by that residence indicating that he was living there, just there were not reports that were generated on every time we drove by a particular residence over the course of a year.

In a sidebar with the court, the government asserted that defense counsel's questioning implied that Sevilla never lived at the Hawthorne residence, contrary to the admission in his proffer. The district court agreed. The government offered to "forego the use of [the proffer]" if Sevilla conceded that he lived at the Hawthorne residence for three to four months. The district court suggested: "If you don't disagree that he stayed there for months at a time, if you just stipulated to that, that would take care of the problem." Sevilla acknowledged he was "stuck with" the admission. The court observed that the government could introduce it.

-3-

Later during the trial, the parties informed the court that they had agreed on a stipulation:

> [DEFENSE COUNSEL]: Your Honor, after the conclusion of Trooper Rauenhorst's testimony, I would simply state as part of the defense's case interrupting the government's case the following: The defense does not contest that Cesar Sevilla-Acosta lived with a friend at [the Hawthorne residence] for a period of three or four months.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: But I would ask, just so it's clear, that this is part of Mr. Sevilla-Acosta's case—that by agreement of the parties we're doing this in the course of the government's case.
>
> THE COURT: That's fine. I will let you take the lead then.

Sevilla has waived any claim that he was "forced" to stipulate that he lived at the Hawthorne residence. He elicited this fact during cross-examination of the DEA agent, before the district court commented on the issue:

> [DEFENSE COUNSEL]: All right. Now, to be clear, my question is not, and it was not meant to imply, that Mr. Cesar Sevilla-Acosta did not stay at [the Hawthorne residence] even for a period of months. My question was whether or not you had any documents showing that he was the lessor of [the Hawthorne residence] or anything like that?

After the court observed that the statement was admissible, Sevilla did not object. Instead, he voluntarily chose to stipulate. He thus waived his right to appeal the stipulation. *See* **United States v. Hawkins**, 215 F.3d 858, 860 (8th Cir. 2000) ("We decline to address Hawkins' contention because by agreeing to the stipulation, he waived any right to argue error on appeal. A stipulation is an agreement between the parties as to a fact of the case, and, as such, it is evidence introduced by both of the

-4-

parties. The Supreme Court recently observed that a 'party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.' *See Ohler v. United States*, 529 U.S. 753, ----, 120 S. Ct. 1851, 1853, 146 L.Ed.2d 826 (2000) . . . . The defendant at a criminal trial must make strategic choices, and Hawkins made the strategic choice to accept this stipulation rather than to press on appeal the government and district court's refusal to accept his stipulation.").

## II.

Sevilla argues that the district court erred in denying his motion for a mistrial based on the court's statement about a co-conspirator. This court reviews the denial of a motion for a mistrial for abuse of discretion. *United States v. Dale*, 614 F.3d 942, 960 (8th Cir. 2010).

During the testimony of cooperating co-defendant Francisco Carreon-Garcia, the government sought to introduce Carreon's drug journals as past recollections recorded and statements of a co-conspirator. Sevilla did not object. The district court admitted the evidence under the co-conspirator exception to the hearsay rule:

> I believe you have established the foundation for [the journals] to be admitted as the statement of a co-conspirator under Rule 801(d)(2)(E) and therefore the books themselves can come into evidence.
>
> . . . .
>
> [The journals are admitted] as the statement of a co-conspirator in furtherance of the conspiracy.

Sevilla objected and moved for a mistrial, arguing that the ruling should not have been made in the jury's presence. The district court denied the motion. It instructed the jury:

Members of the jury, let me clarify something for you. When I just admitted these two documents into evidence, I referred to something called the co-conspirator exception or co-conspirator statement exception to the hearsay rule. That's just a label that means something to me and the lawyers. It's a legal label. It is *not* a finding by me that Mr. Sevilla was in fact a conspirator of Mr. Carreon or anyone else. Whether or not Mr. Sevilla is guilty of the charge against him is entirely for you to decide; it isn't for me to decide. In no way, shape or form was I implying by referring to this label for one of the rules of evidence was I implying that I somehow have decided that Mr. Sevilla is guilty; I haven't. It's not my decision to make. In no way was I suggesting to you what your verdict should be. All right. Do you all understand that? Okay.

At the close of evidence, the district court denied Sevilla's renewed motion for a mistrial. During final instructions, it issued another curative instruction, approved by both parties:

**Instruction No. 9**

Yesterday when I admitted the journals kept by Mr. Carreon into evidence, I referred to a rule of evidence that lawyers refer to as the "co-conspirator" or "co-conspirator statement" exception to the hearsay rule. Under this rule, an out-of-court statement (such as Mr. Carreon's entries into his journals) may be admitted against a defendant (such as Mr. Sevilla) if the person who made the statement was, at the time, alleged to be a co-conspirator of the defendant.

To admit an out-of-court statement under this exception, the judge need only find that the government has introduced some evidence of a conspiracy—for example, the testimony of a witness that a conspiracy existed. The judge does not need to find that such evidence was credible—just that such evidence was *introduced* by the government.

Thus, I admitted Mr. Carreon's journals into evidence because Mr. Carreon testified that he was part of a conspiracy with the defendant.

-6-

When I admitted Mr. Carreon's journals into evidence—and when I referred to the "co-conspirator" exception to the hearsay rule—I was not in any way suggesting that I did or did not believe Mr. Carreon, or that I did or did not find his testimony persuasive.

It is entirely for you to decide whether to believe Mr. Carreon and what weight, if any, to give his testimony. Likewise, it is entirely for you to decide whether the government has proven, beyond a reasonable doubt, that the defendant is guilty of the crime charged. Nothing that I have said during this trial was intended to give—or should be interpreted by you as giving—any opinion or suggestion about any of these matters.

District courts "should rule on the admissibility of a coconspirator's statement on the record but out of the hearing of the jury." *United States v. Hester*, 140 F.3d 753, 758 (8th Cir. 1998), *citing* **Fed. R. Evid. 104(c)**; *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978). Here, the court's ruling in the jury's presence was error. *Id.* However, it "was not so prejudicial as to require a mistrial or reversal." *Id. See also United States v. Schrenzel*, 462 F.2d 765, 774 (8th Cir. 1972) ("Statements made by the trial judge are not cause for reversal unless prejudicial error is apparent . . . each record must speak for itself in determining if improper comments by the trial judge were prejudicially erroneous.") (internal citations omitted). As in *Hester*, the district court here "immediately offered a curative instruction, admitting that it misspoke and that the jury must decide whether the defendants were actually members of the conspiracy. The next day, the district court again offered a curative instruction, after renewed motions for mistrial, stressing the duty of the court to rule on the admissibility of evidence and the duty of the jury to determine who was part of the conspiracy." *Hester*, 140 F.3d at 758. These instructions "were sufficient to purge any prejudicial effect of the court's earlier misstatement, rendering the error harmless." *Id.* at 759. *See also United States v. Petrovic*, 701 F.3d 849, 857 (8th Cir. 2012) ("[L]ess drastic measures [than mistrial] such as a cautionary instruction are generally sufficient to alleviate prejudice stemming from accidental comments.") (internal quotation marks omitted); *United States v. Castro-Higuero*, 473 F.3d 880,

887 (8th Cir. 2007) ("We have always been reluctant to disturb a judgment of conviction by reason of a few isolated, allegedly prejudicial comments of a trial judge.") (internal quotation marks omitted). The district court did not abuse its discretion in denying Sevilla's motion for a mistrial.

III.

Sevilla maintains that the government "improperly vouched for the credibility" of two witnesses during closing argument. "To obtain a reversal based on prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." *United States v. Brown*, 702 F.3d 1060, 1065 (8th Cir. 2013), *quoting United States v. Mullins*, 446 F.3d 750, 757 (8th Cir. 2006). If there is no objection, this court reviews for plain error. *United States v. Hyles*, 521 F.3d 946, 958 (8th Cir. 2008) ("[I]f an arguably improper statement made during closing argument is not objected to by defense counsel, we will only reverse under exceptional circumstances."), *quoting Mullins*, 446 F.3d at 758. "Improper vouching may occur when the government expresses a personal opinion about credibility, implies a guarantee of truthfulness, or implies it knows something the jury does not." *Bass v. United States*, 655 F.3d 758, 761 (8th Cir. 2011). "Although attempts to bolster a witness by vouching for his credibility are normally improper, the government may explain why the jury might find the government's witnesses credible." *Id.* (internal citations omitted).

During closing, the government summarized the testimony of a cooperating witness ("Paco") who said he supplied Sevilla with marijuana for two years. The government remarked, "He was a very credible witness in the government's mind." Sevilla did not object. The government continued:

When asked about his motives for testifying, sure, he wants to see his wife and he wants to see his five-year-old kid, but what did he say? Why is he testifying? He wants to get some benefit . . . . But where does that benefit come from? It comes from truthful testimony, telling the truth. Did you see how Paco was very careful to not want to say anything that was wrong? He kept saying over and over I don't want to get this wrong, I want to be truthful, I can't answer that question because I don't know for sure.

You know, it kind of reminds me, his testimony, of a person who goes to the shopping center every couple weeks, maybe every week, to buy some milk or to buy other groceries and he knows that he gets milk every week or so, but he doesn't know if he gets a half a gallon or two gallons, but he knows that he gets milk just about every single time he goes to the grocery store. Can he tell you what date he got two gallons or what date he got a half a gallon? No. Can he tell you when he first started going to the grocery store in 2007? No. Can he tell you when he switched grocery stores from Super Valu to whatever, to Costco? No; most people can't. Through his testimony I think it was very clear that he did as best he could to remember the dates, and times, the amounts. And you're the judges of his credibility, but based on that testimony, we ask that you believe him.

The government's statements were not "improper vouching." **Bass**, 655 F.3d at 761. The government summarized Paco's testimony, "arguing [his] credibility," "not vouching" for it. **Id**. Significantly, the government never alluded to anything outside the record and did not ask the jury to rely on its personal opinion to make a decision. **Id.**; **United States v. Bentley**, 561 F.3d 803, 813-14 (8th Cir. 2009) (allowing government's comments—"I submit they are [to be believed]," "I submit they were credible when they testified," and "I would submit that you would believe their testimony based on that alone"—because "the government based its credibility assessment on the witnesses' demeanor at trial, not on any special knowledge"). Rather, it stated that the jury was the judge of credibility. **Bass**, 655 F.3d at 761; **Bentley**, 561 F.3d at 814 (no error where the government "focused on credibility

evidence and the jury's role in determining credibility, not the prosecutor's personal opinion of the witnesses' credibility"). This was not plain error.

Sevilla also challenges the government's statement about "Chapo," another cooperating witness:

> [GOVERNMENT]: Now, Chapo, he wasn't nearly as smart as Paco. That seemed clear. But he was so honest in his—
>
> [DEFENSE COUNSEL]: Objection, your Honor, improper argument.
>
> [GOVERNMENT]: I'll withdraw that.
> He seemed to be credible in the manner in which he sort of manifested his perhaps low-level of intelligence, to put it kindly. He didn't get frustrated too badly. He stuck to what he appeared to believe to be the truth and that is, that he came up and just about every other time he came up he saw the defendant get marijuana from Paco so he corroborates Paco.

Sevilla asserts that the government's statement was prejudicial, especially combined with other trial errors. *United States v. Holmes*, 413 F.3d 770, 774-75 (8th Cir. 2005) (considering cumulative effect of prosecutor misconduct). This argument is meritless. The government withdrew the statement and then explained why the jury should find Chapo credible. *Bass*, 655 F.3d at 761.

The government's closing did not prejudice Sevilla or deprive him of the right to a fair trial.

* * * * * * *

The judgment is affirmed.

_____

-10-