# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2510

_____

United States of America

*Plaintiff - Appellee*

v.

Tiffany Rene Morris, also known as Tiffany Vann

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 15, 2016
Filed: April 5, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury found Tiffany Rene Morris guilty of conspiracy to commit wire fraud and five counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. Morris appeals the district court's[1] denials of: (1) her motion for judgment of acquittal, (2)

---

[1]The Honorable D. Price Marshall, Jr., United States District Court Judge for the Eastern District of Arkansas.

her motion to exclude voicemail messages, (3) a new trial based on prejudicial statements by Mance and the prosecutor, and (4) a downward variance from the sentencing guidelines. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Morris and Sherrye LaJoyce Mance conspired to solicit participation in fake credit-repair or grant programs. Mance recruited most of the victims, who were told all they needed to do was pay a fee to repair their credit or receive grant money. To get even more money, victims could recruit others to participate in the grant program. The enrollment fees were wired to Morris via MoneyGram. Many victims never met Morris in person, but most spoke with her by phone. After receiving money, Morris and Mance continued to communicate with the victims to convince them the programs were legitimate. No participants reported higher credit scores or received grant money. When some victims requested a refund of enrollment fees, Morris threatened them. Mance said Morris initially recruited her to participate in the credit-repair program, but even after realizing the programs were not real, Mance recruited others. Mance pled guilty to conspiracy to commit wire fraud. Morris proceeded to trial.

I.

Morris appeals the district court's denial of her motion for judgment of acquittal. She claims there was insufficient evidence for the conspiracy conviction because the indictment's "overt acts" list nine victims—different from those in the individual wire fraud counts. Only two of the overt-act victims testified at trial. Neither saw Morris, but both spoke to her by phone. She also attacks the sufficiency of the evidence for the wire fraud convictions in counts 2, 4, 7, and 8 because Mance solicited the victims and had "major involvement and control over this enterprise."

This court reviews de novo the denial of a motion for judgment of acquittal, viewing the evidence most favorably to the guilty verdict, resolving all evidentiary

conflicts in favor of the government, and accepting all reasonable inferences from the evidence. *United States v. Davis*, 812 F.3d 1154, 1156 (8th Cir. 2016). This court overturns a jury verdict only if no reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

To prove conspiracy, the government's evidence must show that "(1) a conspiracy with an illegal purpose existed; (2) [Morris] knew of the conspiracy; and (3) [Morris] knowingly joined and participated in the conspiracy." *United States v. McKanry*, 628 F.3d 1010, 1016 (8th Cir. 2011). "The conspiracy's existence may be proved by direct or circumstantial evidence." *United States v. Cain*, 487 F.3d 1108, 1111 (8th Cir. 2007). To prove wire fraud, the government must show "(1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme." *United States v. Rice*, 699 F.3d 1043, 1047 (8th Cir. 2012).

Mance testified that Morris recruited her to the programs. Morris told her how much to collect from each client. Mance wired Morris the money via MoneyGram. According to MoneyGram records, Morris recieved about $187,000 through MoneyGram between 2004 and 2011—$104,000 from Mance and $83,00 directly from victims. Each of the wire frauds was sent via MoneyGram. Many victims complained to Mance and Morris. After receiving a letter from the Attorney General about the legitimacy of the company, Mance discussed it with Morris. Morris replied to the Attorney General on behalf of Mance, stating Mance was no longer affiliated with the company. Morris and Mance then changed the name of the company. All of the victims who testified had some kind of contact with Morris—either in person, by phone, or by sending money directly to her. A reasonable jury could have found Morris guilty of the conspiracy and wire fraud counts beyond a reasonable doubt. *See United States v. Ruiz-Altschiller*, 694 F.2d 1104, 1109 (8th Cir. 1982) ("In proving a conspiracy charge, the government is not limited to establishing the overt acts charged in the indictment."). *See also United States v. Louper-Morris*, 672 F.3d 539,

556 (8th Cir. 2012) ("Fraudulent intent need not be proved directly and can be inferred from the facts and circumstances surrounding a defendant's actions.").

## II.

Morris moved to exclude voicemail messages where she is heard threatening a victim that she had her social security numbers, personal information, and knew where she lived. Morris argues that these messages were unfairly prejudicial, "highly inflammatory," with "graphic, profane, and extremely harsh language." *See* **Fed. R. Evid. 403**. The victim, who received threatening voicemails from both women, had never personally met either one. The district court denied her motion, but excluded use of, or reference to, the transcript of the voicemails. This court reviews the district court's denial of a motion in limine for abuse of discretion. ***United States v. Blaylock***, 535 F.3d 922, 927-28 (8th Cir. 2008). "That discretion is particularly broad in a conspiracy trial." ***United States v. Jones***, 275 F.3d 673, 680 (8th Cir. 2001).

The district court properly admitted the voicemails. The victim testified she spoke with Morris several times over the phone before receiving the threatening voicemails, while Mance identified herself on her voicemails. The district court allowed Morris to cross-examine the witnesses—both the recipient of the voicemails and an investigator—about the caller's identity. The court instructed the jury to decide whether it was "Ms. Morris or whomever you decide was on these tapes." *See* ***United States v. Parker***, 551 F.3d 1167, 1172 (10th Cir. 2008) ("[A] lay witness need only be 'minimal[ly] familiar[ ]' with a defendant's voice before offering an identification" and "it is for the jury to assess other evidence that may undermine the credibility of identification testimony." (quoting ***United States v. Zepeda-Lopez***, 478 F.3d 1213, 1219 (10th Cir. 2007)).

The district court found that the voicemails were relevant to show intent, and were not unfairly prejudicial. *See* ***United States v. Pirani***, 406 F.3d 543, 555 (8th Cir.

2005) (en banc) (finding use of profanity in recorded conversation did not create risk of unfair prejudice where content of conversation was relevant). In order to minimize the focus on profanity, the court ruled that the jury should not see the transcript of the voicemails. The court also instructed the jury to focus on the content of the messages, not the language used. *See United States v. Henson*, 939 F.2d 584, 585-86 (8th Cir. 1991) (finding district court properly admitted evidence of defendant's threats under Rule 404(b), and evidence of threats was not unfairly prejudicial). The district court did not abuse its discretion in admitting the voicemails.

## III.

Morris moved for a new trial. This court reviews the denial of a motion for new trial for an abuse of discretion. *Lopez v. United States*, 790 F.3d 867, 871 (8th Cir. 2015). "Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012). "The prejudicial effect of any improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt." *Id.* "Generally, remedial instructions cure improper statements, and substantial evidence of guilt precludes reversing the district court." *Id.* (internal quotations and ellipsis omitted).

## A.

Morris moved for new trial, claiming Mance's statement that Morris "killed a baby" of her brother's, suggested she had confessed to child homicide. Excusing the jury, the court asked Mance about the statement. She explained Morris was the driver in a car accident where her niece or nephew was killed. Morris agreed that the statement could be cured with further questioning. When the jury returned, Mance explained the context of the statement and that this was one of many excuses Morris gave victims to explain why the credit-repair and grant programs were not working.

The district court did not abuse its discretion in denying the motion for new trial based on Mance's statement.

B.

Morris also seeks a new trial based on the prosecutor's comment in rebuttal closing: "At least Ms. Mance took the stand and said this is what it was about and I was part of it." The district court, sua sponte, immediately instructed the jury to disregard the comment, adding: "Remember what I told you about nobody having the obligation to testify." Mance did not move for a mistrial. "This court's standard of review when no motion for a mistrial was made at trial is only for plain error." ***United States v. Spencer***, 592 F.3d 866, 880 (8th Cir. 2010). *See also **United States v. Behler***, 14 F.3d 1264, 1268 (8th Cir. 1994) ("Behler failed to object to the procedures used by the district court or to request a mistrial after the district court spoke with the jurors. Accordingly, Behler is entitled to a new trial only if the district court committed plain error resulting in a miscarriage of justice."). "This court has the discretion to reverse if the defendant shows (1) an error, (2) that was 'plain,' (3) 'affects substantial rights,' and (4) 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" ***United States v. Garcia-Hernandez***, 803 F.3d 994, 996 (8th Cir. 2015).

"The Fifth Amendment forbids direct comment by the government on a defendant's failure to testify, or any indirect references to it if motivated by an intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify." ***United States v. Martin***, 777 F.3d 984, 996 (8th Cir. 2015) (internal quotations omitted). "Both tests require attention to the entire context of the remarks, including the argument itself, and the larger context of the evidence introduced at trial." ***Id.*** "A direct or especially blatant indirect comment cannot be cured by the standard privilege instruction." ***Spencer***, 592 F.3d at 881. But, "where the argument in favor of finding a constitutional violation is tenuous at best, the privilege instruction is an additional safeguard." ***Id.*** (brackets omitted).

In *Spencer*, counsel for a co-defendant said, "You will hear directly from Fred Spencer. He has always been cooperative. He's not going to hide behind the Fifth Amendment." *Id.* at 880. This court found that the comment did not affirmatively address the other defendants' decisions not to testify, but instead emphasized that another *would* testify. *Id.* at 881. Any reference to the defendants' failure to testify was "the product of inference alone," and the court's instruction sufficiently cured any potential prejudice to the other defendants. *Id.* In *Martin*, the prosecutor said, "the only people that are actually going to talk about what occurred at the house are Geshik Martin and David Martin. That is who you heard from." *Martin*, 777 F.3d at 996. The context of the closing argument showed that the comment was intended to rebut certain testimony, not call attention to another defendant's silence. *Id.*

The prosecutor's comment here is like those in *Spencer* and *Martin*. During closing, Morris's counsel spent a great deal of time attacking Mance's credibility:

> [Mance] has no humility and has no shame. If I had, and I think most good decent people, if I had been on the witness stand for as long as she was yesterday and gone through that type of embarrassment and humiliation and have to talk about this ordeal, I can assure you, I would have been out of this courtroom as quick as I could get. I wouldn't want to be anywhere near this courtroom or the victims of her fraud who were sitting back there. And she was ready to come in and just sit right amongst them. And I think that says a great deal about her character and about her.

In rebuttal, the prosecutor said, "No humility and no shame. Talk about no humility and no shame. At least Ms. Mance took the stand and said this is what it was about and I was part of it." In context, this comment countered the defense's argument. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."). Because the comment was not direct or especially blatant, a reasonable jury would not naturally and necessarily

interpret this as commenting on Morris's failure to testify. *See **Spencer***, 592 F.3d at 881. Any prejudice to Morris is the product of inference alone. *See **id.*** The court's instruction sufficiently cured any potential prejudice caused by the comment.

IV.

Morris claims the district court should have varied downward. She emphasizes she is the caregiver for her nephew who has special needs. *See **United States v. Lehmann***, 513 F.3d 805, 807-09 (8th Cir. 2015) (affirming only probation when the guidelines recommended imprisonment; district court found imprisonment would negatively affect emotional development of defendant's young disabled son). This court reviews the sentence under a deferential abuse of discretion standard. ***United States v. Acosta***, 619 F.3d 956, 962-63 (8th Cir. 2010).

The district court properly explained its reasons for Morris's sentence under the § 3553(a) factors. The district court said this was not a case where Morris's nephew was being "essentially orphaned," finding other family members would be able to take care of him. The district court also considered the large number of victims Morris defrauded, that she continued the scheme after being told to stop, and the need to protect the public. *Cf. **Lehmann***, 513 F.3d at 807-09 (finding Lehmann "as mild as a felon in possession can [be]," where her daughter accidentally killed herself with Lehmann's gun, and due to the daughter's accident death, incarceration was unnecessary). The district court did not abuse its discretion by denying Morris a downward variance.

* * * * * * *

The judgment is affirmed.

———————————————————