# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2792

_____

United States of America

*Plaintiff - Appellee*

v.

Mohammad Al Sharairei

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: May 10, 2024
Filed: March 7, 2025

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted Mohammad Al Sharairei of maintaining a premises for the purpose of distributing controlled substance analogues and conspiracy to distribute controlled substance analogues. See 21 U.S.C. §§ 813, 841(a)(1), 841(b)(1)(C), 846,

856(a)(1), 856(b). The district court[1] sentenced him to 240 months in prison and ordered forfeiture in the amount of $425,000. Al Sharairei appeals.

## I.

In 2012 and 2013, Al Sharairei and his wife owned and operated Puff N Stuff II, a shop in Cedar Rapids, Iowa. Puff N Stuff II was open 24 hours a day, seven days a week and sold a range of products, including snacks, soda, cigarettes, and smoking paraphernalia. The most popular products were synthetic cannabinoids, known as "potpourri" and "incense," which generated most of the store's revenue. These potpourri and incense products had names like Head Trip, Lights Out, and Mega Kush[2] and were openly displayed in foil packages and organized by brand in a glass case. A note taped on the display case stated: "All products within are incense and should be discussed as such. Consuming these products is illegal. Referring to them in a consumable way whatsoever can get you removed from this store." And a list of rules posted inside the shop instructed employees: "Do not explain how to use our products."

In May 2013, law enforcement officers conducted an undercover controlled purchase of synthetic cannabinoids at Puff N Stuff II. They purchased two packages of potpourri—Black Arts and Lights Out. The package of Lights Out was tested and found to contain .85 grams of 5F-PB-22, a synthetic cannabinoid.

In June 2013, law enforcement executed a search warrant at Puff N Stuff II where they seized a computer that served as the cash register and captured sales records, as well as hundreds of products that later tested positive for the synthetic cannabinoids PB-22 and 5F-PB-22. Brands that were seized included Bizarro, Head Trip, Lights Out, Night Train, Grave Digger, Mega Kush, Freedom, Avalon,

---

[1]The Honorable Leonard T. Strand, then Chief Judge, now United States District Judge for the Northern District of Iowa.

[2]The jury heard testimony that "[k]ush is a slang term for marijuana."

Darkness, Full Throttle, Devil's Dank, and Black Arts. Puff N Stuff II coded almost all of these sales as "botanical sachets," which totaled over 70 percent of the store's monthly sales. Al Sharairei continued selling synthetic cannabinoids at Puff N Stuff II afterwards.

The following year, law enforcement interviewed Al Sharairei twice. During his first interview, in January 2014, Al Sharairei was described as "evasive and rambling," but he acknowledged being the biggest seller of synthetic cannabinoid products in town and that he "made lots of money." During his second interview, in March 2014, law enforcement sought to obtain information about Al Sharairei's supplier, Charles Wolfe. Al Sharairei explained that he used to purchase product from a supplier in Chicago, but when that supplier got "a lot of attention from law enforcement," he started buying from Wolfe instead. Al Sharairei also described "the tricks to getting around law enforcement" that Wolfe taught his clients, including Al Sharairei, such as "what language to use to avoid acknowledging what the products were really meant for."

In June 2014, the government charged Al Sharairei in a one-count indictment with maintaining a premises for the distribution of controlled substance analogues. See 21 U.S.C. § 802(32)(A)(i)–(ii) (defining "controlled substance analogue," in part, as a substance that has a "substantially similar" chemical structure, or "substantially similar to or greater than" effect on the central nervous system, as a schedule I or II controlled substance). After he failed to appear for his scheduled guilty plea hearing, the district court issued a warrant for his arrest. Al Sharairei absconded and eluded arrest for over seven years.

Meanwhile, in March 2017, a grand jury returned a four-count superseding indictment, charging Al Sharairei with, as relevant on appeal, maintaining a premises for the distribution of controlled substance analogues (Count 1) and conspiracy to

distribute controlled substance analogues (Count 2).[3] The indictment also included a forfeiture allegation. Al Sharairei was eventually located in Brazil and, in January 2022, extradited to the United States.

Trial began in September 2022. Over Al Sharairei's objection, the district court gave the following "deliberate ignorance/willful blindness" instruction to the jury:

> You may find that the defendant acted with the requisite "knowledge" as to the nature of the substances for either Count 1 or 2 if you find beyond a reasonable doubt that the defendant believed there was a high probability that the substances were regulated by federal drug abuse laws and that he took deliberate actions to avoid learning that fact.
>
> Knowledge can be inferred if the defendant deliberately closed his eyes to what would otherwise have been obvious to him. A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. You may not find the defendant acted "knowingly" if you find he was merely negligent, careless, or mistaken.

The court also gave the following instruction for the charge of maintaining a drug-involved premises[4]:

> For you to find the defendant guilty of "maintaining a premises for the distribution of controlled substance analogues," the prosecution must prove beyond a reasonable doubt all of the following elements:
>
> One, from at least January 2012 and continuing through at least June 26, 2013, the defendant knowingly used or maintained a place, specifically, the Puff N Stuff II store located at 1545 1st Avenue SE, Cedar Rapids, Iowa;

---

[3]Al Sharairei was also charged with money laundering and illegal gambling, but those charges were dismissed pretrial on the government's motion.

[4]Al Sharairei does not challenge this instruction on appeal.

-4-

Two, the defendant did so for the purpose of distributing one or more controlled substance analogues, specifically 5F-PB-22 and PB-22, knowing that the substances were intended for human consumption.

The jury returned a guilty verdict on both counts, and the district court denied Al Sharairei's motion for judgment of acquittal or, in the alternative, a new trial. Al Sharairei appeals, challenging his convictions, his 240-month sentence, and his forfeiture judgment in the amount of $425,000.

II.

Al Sharairei argues that the district court erred by instructing the jury on willful blindness. We review for abuse of discretion. See United States v. Atkins, 881 F.3d 621, 627 (8th Cir. 2018). "A willful blindness instruction is proper if the evidence 'support[s] the inference that the defendant was aware of a high probability of the existence of the fact in question *and* purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.'" United States v. Aleman, 548 F.3d 1158, 1166 (8th Cir. 2008) (alteration in original) (quoting United States v. Barnhart, 979 F.2d 647, 652 (8th Cir. 1992)). The instruction is not appropriate "when the 'evidence points solely to either actual knowledge or no knowledge of the facts in question. . . . '" United States v. Magallon, 984 F.3d 1263, 1286 (8th Cir. 2021) (quoting United States v. Lewis, 557 F.3d 601, 613 (8th Cir. 2009)). But "[e]ven when there is evidence of actual knowledge, a willful blindness instruction is permissible if there is sufficient evidence to support an inference of deliberate ignorance." United States v. Unpradit, 35 F.4th 615, 625 (8th Cir. 2022). "When considering the district court's decision to give a willful blindness instruction, we view the evidence in the light most favorable to the government." Magallon, 984 F.3d at 1286.

A.

We start with Al Sharairei's conviction for conspiracy to distribute a controlled substance analogue. See 21 U.S.C. §§ 841(a)(1) and 846. "To prove a

conspiracy to distribute drugs under 21 U.S.C. § 846, the government must show: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally or knowingly joined the conspiracy." United States v. Trejo, 831 F.3d 1090, 1094 (8th Cir. 2016).

Al Sharairei argues that a willful blindness instruction is inconsistent with a conspiracy charge because "one cannot enter into an agreement to do something to which he is willfully blind." However, we have repeatedly upheld the submission of a willful blindness instruction to prove a defendant's knowledge of a conspiracy's objectives. See id. at 1095 (affirming willful blindness instruction because jury could reasonably find that defendant had "actual knowledge . . . or deliberately failed to inquire about" the aims of the conspiracy, namely, distribution of methamphetamine); United States v. King, 898 F.3d 797, 807 (8th Cir. 2018) (affirming use of willful blindness instruction on drug conspiracy count when defendant claimed she lacked knowledge that the clinic where she worked was a "pill mill"). Here, the district court's willful blindness instruction pertained only to the conspiracy's objectives, i.e., whether Al Sharairei knew the nature of the substances, and not to whether he willfully joined a conspiracy. Under our precedent, this instruction was permissible. See, e.g., King, 898 F.3d at 807. Al Sharairei attempts to distinguish his case because the object of the alleged conspiracy was to distribute a controlled substance analogue. But that argument too is foreclosed. See United States v. Anwar, 880 F.3d 958, 968 (8th Cir. 2018) (upholding conviction for conspiracy to distribute a controlled substance analogue "[b]ecause Anwar's deliberate ignorance satisfie[d] the knowledge element of the crime").

In the alternative, Al Sharairei argues the district court abused its discretion in submitting the instruction on the facts of this case. We disagree. The evidence, viewed in the light most favorable to the government, supports an inference that even if Al Sharairei lacked actual knowledge that the products he sold at Puff N Stuff II contained controlled substance analogues, "it was only because []he chose not to investigate and effectively buried h[is] head in the sand." United States v. Florez,

368 F.3d 1042, 1045 (8th Cir. 2004); see also Anwar, 990 F.3d at 967–68. The jury heard testimony that Puff N Stuff II routinely sold its potpourri and incense products along with paraphernalia, such as rolling papers or pipes; that pipes were "the most common way to consume" the products; and that the store warned customers and employees not to discuss how the potpourri and incense products were used. The store sold these products at much higher prices than one might pay for "traditional" potpourri or incense (described at trial, respectively, as "dried dead flowers" that have "a pleasant smell" and the "long sticks that you can light" with a "nice scent") elsewhere. The revenue from sales of the potpourri and incense products at Puff N Stuff II accounted for more than 70 percent of the store's total revenue.

The jury also heard testimony that Al Sharairei understood how to feign ignorance. Al Sharairei's cellmate testified that Al Sharairei explained how a person can "beat their case from ignorance like they don't know," and that this was one way he could "beat [his] case." And a law enforcement officer testified that Al Sharairei's second supplier, Wolfe, taught him "what language to use" to avoid "law enforcement attention." This evidence is sufficient for a reasonable jury to find that Al Sharairei knew the nature of the substances he was selling. Alternatively, it supports an inference that he was on notice of the nature of the substances but deliberately "buried h[is] head in the sand" to avoid learning more about them. Florez, 368 F.3d at 1045; see also Unpradit, 35 F.4th at 625.

B.

Next, we address Al Sharairei's conviction for maintaining a drug-involved premises. See 21 U.S.C. § 856(a)(1). This statute makes it unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance[.]" Id. Al Sharairei argues the district court erred in giving a willful blindness instruction on this count, relying on the Fifth Circuit's decision in United States v. Chen, 913 F.2d 183 (5th Cir. 1990). Al Sharairei characterizes Chen as holding "that a deliberate ignorance or willful blindness instruction . . . cannot be given in a

prosecution" under 856(a)(1). But the Fifth Circuit's holding was not so broad. In Chen, the Fifth Circuit determined that a deliberate indifference instruction was inappropriate for determining whether the government had proven that a premises was maintained "for the purpose of" drug distribution. See id. at 190. The court reasoned that because "the phrase *for the purpose of* [in § 856(a)(1)] applies to the person who opens or maintains the place for the illegal activity," "[o]ne cannot be deliberately ignorant (in order to convict for the knowledge element [of maintaining any place]) and still have the purpose of engaging in illegal drug activities." Id. We have acknowledged the same limitation. See United States v. Tebeau, 713 F.3d 955, 959–60 (8th Cir. 2013).

In this case, however, the district court did not give the willful blindness instruction as a way of proving whether Al Sharairei knowingly maintained a premises "for the purpose of" distribution. Rather, the jury was provided the instruction to determine whether he knew the nature of the substances involved.[5] Chen does not address this use of the instruction.[6] Al Sharairei does not otherwise challenge the jury instructions setting forth the necessary mens rea with respect to the controlled substances at issue, offering only the broad assertion—unsupported here—that Chen mandates reversal. On this argument, he has failed to show an abuse of discretion.

---

[5]Al Sharairei also challenges whether there was sufficient evidence to submit the willful blindness instruction on the nature of the substances, and for the reasons already explained, there was.

[6]Chen, for example, does not address the effect, if any, of the phrase "for the purpose of" on the mens rea requirement applicable to the nature of the "controlled substance."

III.

A.

We turn next to Al Sharairei's argument that there was insufficient evidence to prove that he knew the substances sold were "controlled." "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." Anwar, 880 F.3d at 967 (quoting United States v. Guenther, 470 F.3d 745, 747 (8th Cir. 2006)). We will uphold the jury's verdict "if there is any interpretation of the evidence that could lead a reasonable jury to convict." Id. (quoting United States v. Brandon, 521 F.3d 1019, 1025 (8th Cir. 2008)). And here, we review his argument in light of our conclusion that the district court did not abuse its discretion in instructing the jury on willful blindness.

To prove the knowledge element in a controlled analogue case, the government must either (1) establish that the defendant knew they were dealing with "some controlled substance," even if they did not know its specific identity, or (2) establish "that the defendant knew the specific analogue" in question, even if they lacked knowledge of "its legal status as an analogue." McFadden v. United States, 576 U.S. 186, 194 (2015); see also United States v. Ramos, 814 F.3d 910, 916 (8th Cir. 2016). The government can prove such knowledge through circumstantial evidence. See Ramos, 814 F.3d at 917. Circumstantial evidence supporting knowledge that a substance is a controlled substance can include: "a defendant's concealment of his activities, evasive behavior with respect to law enforcement, knowledge that a particular substance produces a 'high' similar to that produced by controlled substances, and knowledge that a particular substance is subject to seizure at customs." McFadden, 576 U.S. at 192 n.1.

Here, for many of the same reasons the willful blindness instruction was appropriate, the evidence was sufficient for a reasonable juror to conclude that Al

Sharairei knew he was selling a controlled substance of some kind. Al Sharairei admitted to law enforcement that he knew the products he sold would "keep you high for 10 to 15 minutes." The product names of the potpourri and incense alluded to drug use, and they were priced by weight in grams, similar to controlled substances and unlike how traditional potpourri and incense are typically sold. A law enforcement officer confirmed that the appearance of the products was "consistent with . . . a synthetic cannabinoid product," and Al Sharairei had used synthetic cannabinoid products before. The jury also saw evidence that Al Sharairei's store displayed signs instructing employees and customers not to refer to the products as "consumable" while they were in the store. Yet the store frequently sold its potpourri and incense products together with items, such as "wraps" for making blunts, that were specifically used to smoke the products.

Al Sharairei argues he had no notice that the substances were controlled and did not know the particulars of their chemical structures. But the jury was free to consider circumstantial evidence that pointed to the opposite conclusion. This evidence, viewed in the light most favorable to the verdict, was sufficient for a jury to reasonably conclude that Al Sharairei knew he was selling a controlled substance of some kind—regardless of its precise chemical structure.[7] See McFadden, 576 U.S. at 194 (explaining knowledge of a controlled substance analogue can "be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance . . . regardless of whether he knew the particular identity of the substance").

---

[7]Al Sharairei centers much of his argument on the second avenue for proving knowledge for an analogue conviction. See McFadden, 576 U.S. at 189 (noting that "[t]he knowledge requirement is also met if the defendant knew the specific [chemical and pharmacological] features of the substance that make it a 'controlled substance analogue.'" (quoting 21 U.S.C. § 802(32)(A))). But because the government presented sufficient evidence to prove knowledge under the first approach described in McFadden, we need not consider Al Sharairei's understanding of the chemical structures of the analogues he sold.

B.

Al Sharairei also argues the district court erred by denying his motion for a new trial. He claims his defense experts' testimony should have been granted more weight because they were as qualified, "or more qualified," than the government's experts. We reverse a district court's ruling on a motion for new trial only in the face of "a clear and manifest abuse of discretion." United States v. Dowty, 964 F.3d 703, 708 (8th Cir. 2020) (quoting United States v. Amaya, 731 F.3d 761, 764 (8th Cir. 2013)). The district court was well within its discretion to credit the "thorough and rational" explanation of the substances' similarities offered by the government's expert when concluding that the evidence, including the testimony from all experts, did "not weigh so heavily against the verdict such that a miscarriage of justice may have occurred." United States v. Brown, 88 F.4th 750, 761 (8th Cir. 2023); see also United States v. Washam, 312 F.3d 926, 931 (8th Cir. 2002) ("We have held that all experts need not agree on whether two drugs' chemical structures are 'substantially similar' in order to affirm a conviction under the Analogue Statute.").

C.

Al Sharairei next challenges the forfeiture order, which was in the form of a $425,000 money judgment. "The government bears the burden of proving by a preponderance of the evidence the amount of the proceeds that should be subject to a personal money judgment." United States v. Peithman, 917 F.3d 635, 651 (8th Cir. 2019). "We review findings of fact for clear error," United States v. Alexander, 714 F.3d 1085, 1091 (8th Cir. 2013), and we review de novo whether a forfeiture violates the Eighth Amendment's Excessive Fines Clause, United States v. Moyer, 313 F.3d 1082, 1086 (8th Cir. 2002).

In June 2013, law enforcement seized Puff N Stuff II's inventory and tested twelve kinds of products, all of which were determined to be synthetic cannabinoids. Using the business's own records, the government calculated the total amount of

sales of these products during the six months prior to the seizure[8] and used this figure to determine the money judgment.

Al Sharairei argues that the district court needed "more certainty" about the "botanical sachets" sold at Puff N Stuff II from January through June of 2013. He asserts that the district court cannot assume, based solely on the lab testing of the products seized in June 2013, that every sachet sold in the prior six-month period necessarily contained synthetic cannabinoids. He points to trial testimony from a government witness that the chemical makeup of these types of products tended to change regularly, and thus, he argues, the products seized were not necessarily the same substances sold in the preceding months.

The district court relied on testimony at the evidentiary hearing and at trial to conclude that $425,000 was a "conservative" calculation of forfeitable proceeds. The court noted that many of the brands seized in June 2013 were not new to Puff N Stuff II's inventory, that Al Sharairei admitted he would buy large quantities of products at a time, and that the sales from "botanical sachets" accounted for more than 70 percent of Puff N Stuff II's total monthly sales for nearly every month of the conspiracy. The record also showed that Al Sharairei continued to sell products from the store for several months after the seizure and that his daily gross sales increased from $3,000 to $4,000 before the seizure to $10,000 to $20,000 afterwards. And the district court credited evidence showing that Puff N Stuff II's sale of "botanical sachets" during the span of the conspiracy—January 2012 to June 2013—was more than $1.3 million. The district court did not need to calculate the proceeds subject to forfeiture with "mathematical exactitude," Peithman, 917 F.3d at 651 (quotation omitted), and we see no clear error in how the court reached the total money judgment.

---

[8]The government's agent explained that the analysis was limited to six months because the further back in time one goes, the greater chance that the store may have sold products that were "chemically different" but "had been put in the same packaging."

Al Sharairei also argues that the district court's failure to consider his indigency when entering the forfeiture order violates the Eighth Amendment's Excessive Fines Clause. But a "defendant's inability to satisfy a forfeiture at the time of conviction, in and of itself, is not at all sufficient to render a forfeiture unconstitutional, nor is it even the correct inquiry." United States v. Smith, 656 F.3d 821, 828 (8th Cir. 2011) (quoting United States v. Levesque, 546 F.3d 78, 85 (1st Cir. 2008)). Rather, the Excessive Fines Clause is violated when the forfeiture amount is disproportionate to the gravity of the offense, not to the defendant's financial circumstances. See United States v. Bajakajian, 524 U.S. 321, 336–37 (1998). The district court's forfeiture order comports with the Eighth Amendment.[9]

D.

Finally, Al Sharairei challenges the district court's calculation of his advisory Guidelines range. "We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error." Anwar, 880 F.3d at 971 (quoting United States v. Miller, 511 F.3d 821, 823 (8th Cir. 2008)).

Al Sharairei contends the district court erred when it included the "pre-raid quantities" of controlled substances to determine his base offense level, because he had no reason to know the substances were illegal until they were seized by law enforcement. See USSG § 2D1.1, comment. (n.6) (discussing controlled substance analogues in determining drug quantities). But, as discussed above, the evidence at trial was sufficient to establish his knowledge of the controlled substances both before and after the seizure. See supra, II.B; United States v. Shaw, 965 F.3d 921,

---

[9]Al Sharairei also asserts the money judgment violated the Excessive Fines Clause because "it cannot be shown that [he] obtained any specific amount of proceeds from the sale of illegal substances," and thus "no proportionality determination can be made." Because Al Sharairei's sole challenge is to the amount of proceeds from illegal sales, our conclusion that the district court did not clearly err in determining the amount of forfeiture resolves this argument as well.

927 (8th Cir. 2020) (noting that when determining drug quantity in a conspiracy, "the sentencing court has wide discretion as to the kind of information it may consider or its source, including trial evidence").

In the alternative, Al Sharairei argues the district court clearly erred under USSG § 2D1.1 when it used a 1:167 ratio, rather than a 1:1 ratio, to determine the marijuana-equivalent weight, because there was no evidence of the concentration of cannabinoid analogue relative to plant material in the seized products. But the district court was not required to exclude the plant weight when calculating drug quantity. See Ramos, 814 F.3d at 920 (affirming base offense level calculation that used the entire weight of substances that contained synthetic cannabinoids sprayed onto plant material). Relatedly, the jury heard testimony that the effects of synthetic cannabinoids on the human body are similar to the effects of THC, and we have deemed the 1:167 marijuana-equivalency ratio appropriate for synthetic cannabinoids in similar cases when the chemicals at issue closely resemble THC. Anwar, 880 F.3d at 971; cf. United States v. Ali, 47 F.4th 691, 700 (8th Cir. 2022) (discussing court's discretion to vary from the Guidelines range based on policy disagreement with the 1:167 ratio). The district court did not err.[10]

IV.

The judgment of the district court is affirmed in all respects.

_____

_____

[10]Al Sharairei also argues that the district court erred when it applied a sentencing enhancement for his role as a supervisor. See USSG § 3B1.1(b). His sole argument is that the enhancement is not warranted because he lacked knowledge that the substances sold at Puff N Stuff II were illegal. Because there was sufficient evidence at trial to establish that Al Sharairei knew he was selling illegal synthetic cannabinoids, he has not shown clear error. See United States v. Jefferson, 975 F.3d 700, 706 (8th Cir. 2020) (reviewing USSG § 3B1.1(b) enhancement for clear error).